SICK *et al. v.* CITY OF BAY ST. LOUIS.

[74 South. 272, Division B.]

1. MUNICIPAL CORPORATIONS. *Bonds. Issue.*

Construing Laws 1916, chapter 287, authorizing the city of Bay St. Louis to issue bonds in the sum of two hundred thousand dollars or so much thereof as may be necessary, and to levy a special tax to pay the bonds and interest not exceeding ten mills on the dollar, for the purpose of building a sea wall, the act being silent as to how the bonds are to be issued and as to how the sea wall is to be constructed, and Laws 1914, chapter 147, which applies to all municipalities, and providing that when bonds are issued in excess of seven per cent. of assessed valuation of a municipality, the question must be submitted to and ratified by the qualified voters before such issuance shall be made. The court held that, chapter 287, Laws 1916, was a mere enabling act in the nature of a charter amendment, conferring additional power on the municipality; and not having the machinery for the issuance of bonds, must be construed in connection with Laws 1914, chapter 147, and the bonds cannot be issued without the election provided for therein.

2. MUNICIPAL CORPORATIONS. *Officers. Validity of acts.*

Where municipal charter provided for the appointment of bond commissioners by the mayor and board of aldermen of the city to construct a sea wall for which bonds were to be issued, such commissioners were at least *de facto* officers and under

Code 1806, section 3473, so providing, their acts within lawful authority are valid and binding and only the state can complain as to questions of their terms and tenures.

3. Municipal Corporations. *Charter. Amendments.*
   The board of mayor and aldermen need not readopt a charter amendment and enter it on their minutes after its publication and approval by the governor and attorney general. The first adoption by the board of mayor and aldermen with its publication and approval by the electors give it life and its recordation on the ordinance book of the city after its approval by the Governor is all that is necessary.

4. Municipal Corporations. *Public improvement. Assessments.*
   The power to assess special benefits on account of a sea wall constructed by a municipality, may be conferred on bond commissioners appointed by the board of mayor and aldermen, since there is no constitutional assessor for municipalities.

5. Municipal Corporations. *Public improvements. What are.*
   A sea wall is in its nature a public improvement for which a city can lay a general *ad valorem* tax on the whole property of the city.

6. Same.
   A city cannot arbitrarily assess special benefits against property owners for improvements, but such assessments must be reasonable, having reference to the benefit conferred, and before this assessment of benefits is made, notice must be given the property owner, with an estimate of the cost of the improvement to be made, with a right to submit evidence and make objections thereto.

7. Corporations. *Public improvements. Bond issues municipal.*
   Where a municipality desired to construct a sea wall and issue bonds for that purpose, unless the city is primarily liable for the whole amount, with right to reimburse itself by a special assessment, the notice, hearing etc., should be made before the bond issue is made.

8. Eminent Domain. *Municipal corporations. Power of.*
   A city has the power to condemn property for public use under its charter, and may exercise the power to erect a sea wall and acquire right of way, etc., nor will the sea wall, if erected, become private property.

9. Municipal Corporations. *Public improvements. Special assessments.*
   Where a municipality constructs a sea wall it cannot arbitrarily impose one-half of the expense on property owners abutting

such improvements, regardless of the cost of construction and the actual benefit conferred, since such assessment might be confiscatory.

APPEAL from the chancery court of Hancock county. HON. W. M. DENNY, Chancellor.

Suit by Conrad Sick and others against the city of Bay St. Louis. From a decree for defendant, complainants appeal.

The facts are fully stated in the opinion of the court.

*R. L. Genin* and *Harry J. Boyle,* for appellants.

The question of law to be decided by this court will be argued in order as set out in the declaration: first, the total assessed valuation of the city of Bay St. Louis is one million six hundred thousand dollars and the bonds attempted to be sold by the city of Bay St. Louis are void in that it is in excess of seven per cent. of the total valuation. And that said intention to issue said bonds were never advertised nor submitted to the people to vote upon as provided by chapters 147 of the Laws of 1914 and 142 of the Laws of 1910, nor section 3419 of the Code of 1906. The city has no right or authority to issue bonds excepting as authorized by its charter or the general laws of the state.

The charter of the city of Bay St. Louis does not authorize the board of mayor and aldermen to issue bonds, such power is obtained by the laws of the State applicable to all municipalities. Under the General laws of the state to wit: Section 3419 of the Code of 1906, chapter 142, of the Laws of 1910, and chapter 147 of the Laws of 1914, the latter two especially provides that all municipalities whether operating under special chapter or under the Code chapter shall not issue bonds including those outstanding for a greater sum than seven per centum of the assessed valuation of the taxable property in the municipality unless authorized by election. It has been

113 Miss.—12

agreed that the bonds attempted to be issued by the city of
Bay St. Louis is in excess of ten per centum of the total
assessed valuation of the taxable property in the city, and
the city claims that they acquire the right to issue these
bonds without publication and an election thereon because,
especially authorized to do so by chapter 287 of the laws
of 1916.

The last mentioned act authorized the city of Bay St.
Louis to issue two hundred thousand dollars worth of
bonds but is silent as to the question of publication and
election. The act being silent as to this, it was the evi-
dent intention of the legislature, that the city of Bay St.
Louis issue these bonds in accordance with the general
laws of the state. Having failed to publish their intention
to issue these bonds and giving the people the right to
vote thereon if they chose was manifestly violation of the
law and renders the issue void. *Town of Clarksdale* v.
*Broaddus.* 77 Miss. 667, 28 So. 955; *Green et al* v. *City of
Rienzi*, 91 Miss. 429, 30 So. 17.

Second, that the first amendment Exhibit ''B'' to the
bill of complaint is in truth and in fact no amendment to
the city charter; that it was proposed advertised and ap-
proved by the attorney general and the governor, but
was never affirmatively adopted or ratified after its re-
turn from the Governor, or entered upon the minute book
as adopted. We contend that section 3444 of the Code of
1906, sets out how amendments should be adopted and
that it required some affirmative action on the part of
board of mayor and aldermen after it was approved by
the Governor; that the first action of the board was only a
suggestion and not an adoption.

This amendment was never adopted by the city as a
part of its organic law and that all acts done and at-
tempted to be done thereunder are void, and that all
persons attempting to act thereunder should be restrained.
*Love* v. *Major et al.,* 44 So. 836.

If there is doubt as to its adoption and powers therein
conferred, it should be construed most strongly against

the rights claimed. *City of Hazelhurst* v. *Mayes,* 51 So. 890.

Third, both amendments are void and of no effect as they attempt to place the power of assessment of special taxes in a bond commission, such power cannot be delegated by the board of mayor and aldermen or taken away from the board of mayor and aldermen or the duly constituted assessor by amendment to the charter. The effect of this amendment would be to create two systems of assessments, one by the bond commission for special purposes and one by the assessor for general purposes. And that the bond commission is appointed by the board of mayor and aldermen for a period longer than the term of the board of mayor and aldermen, the said commission being for five years and the board for only two years. The board thereby creates officers and appoints these officers to a term two and a half times longer than the body appointing, binding two future administrations and appointing these officers for a longer term than fixed by the general laws and policy of the state and therefore illegal.

Fourth. The city cannot construct an improvement such as sea walls and arbitrarily fix an amount as a tax upon property where this improvement is constructed.

In considering this case we ask the court to keep in mind the fact that one of the appellants owns property on the beach and the sea wall is to be built on his property, while the other appellant lives and owns property in the rear of the city and his property is to be taxed to pay the city's proportionate part of the cost of the sea wall which in no way protects his property.

We contend that a municipality has no power, even though it attempts to acquire that power by amending its charter, to go on individual property without the consent of and notice of the owner and build thereon a improvement such as a sea wall or any sort of improvement without acquiring title, to or continual control over said property. First, because it would be taking property without

due process of law, and, second, if the city did go upon this property by consent and build a sea wall with public funds, the wall would then become individual property, or the property of the parties upon whose land it was built. The city should be restrained from constructing this imrovement, until title or such rights are acquired in the proper legal way, as would give the city permanent rights of use and control over this expensive improvement they contemplate.

The right of a municipality to make or damage private property for public use is not different from that of any other person or corporation having the right to eminent domain. *City of Jackson* v. *Williams,* 92 Miss. 301, 46 So. 551.

Fifth, that a sea wall is not in its nature a public improvement for which the city can levy a general tax. A sea wall is not used as a side walk or street, or in any way for the use of the welfare of the general public. But it is the building upon the individual beach property a permanent improvement, for which the city authorities are attempting to tax the property holders of the entire city, including those in the rear who receive no direct benefit. Section 17 of our Constitution prohibits the city from arbitrarily saying that the use is public, and whether the use is public or private is a judicial question, which under the pleading and agreed statement of facts is for this court to decide. *Cox* v. *Wallace,* 56 So. 461.

Sixth, the city of Bay St. Louis is attempting to issue bonds and construct an improvement upon property of one of the appellants (on the beach) and charge him with approximately fifty per cent. of the cost without giving him notice or opportunity to object to the cost, character and location of the improvement. If such be permitted it would be placing a burden upon appellant without notice or an opporutnity to be heard. Not only does the city fail to give him notice of the things above stated, but they fail to first give him notice of their intention to issue bonds to pay for this improvement. After a careful reading of

the amendments to the city charter and the agreed statement of facts in this case the court will find that the only opportunity the appellant has to raise his voice in protest of the improvement or sea wall being constructed on his place, is after the work is completed and too late. The property holder who lives in the rear never has an opportunity to object because he is to be taxed to pay the city's *pro rata* by a general *ad valorem* tax.

The case of *M. P. Bouslog et al.* v. *City of Gulfport,* number 19435 on the supreme court docket recently decided by your honorable court, is somewhat different from this case, as in that case notice of the amount of assessment was not provided for by publication or otherwise, but in this case the city of Bay St. Louis has provided for notice of assessment by two weeks' publication.

In the case of *Town of Waveland* v. *Chas. G. Moreau et al.*, 69 So. 214, the court held that the property holders should have notice of the amount of betterment tax assessed against them before bonds could be issued, it has been the rule in this state and in other states that property holders should have notice and an opportunity to be heard before placing a special improvement, see, *Wilkinson* v. *Lee*, 51 So. 921.

We again ask the court that if the charter of the city of Bay St. Louis gives the property holder the right to be heard only after the work is completed the cost becoming a lien on his property and the assessment only to be made, we ask in all seriousness, what chance will he have.

We submit to the court in conclusion, that if the city of Bay St. Louis is permitted to issue bonds and proceeds as they intend according to the void amendments, they would construct an improvement, in its nature private, upon the land, of the appellant, and fifty per cent. of the cost thereof becomes a lien upon this property; that his property would be illegally and unjustly taxed to pay therefor. That the appellant's property situated in the rear of the town would be taxed to pay a part of the cost of the sea wall without benefit.

We therefore contend that the decree of the chancellor is erroneous and that this cause should be reversed and permanent injunction entered restraining the city of Bay St. Louis and their bond commission from issuing bonds and levying taxes as attempted.

*E. J. Gex,* for appellee.

The first assignment of error raised in this case is as to the right of the city of Bay St. Louis to issue bonds for a greater amount than ten per cent. of the assessed value of the property. We contend that the city gets this right from chapter 287, Laws 1916. That this could be done when authorized by the legislature that no one would doubt. If the legislature could say that they, the city, could issue bonds for ten per cent of the assessed value why could they not have said twenty per cent or any amount they saw fit? This being solely a legislative question and the legislature having said what amount of bonds could be sold for a specific purpose this court has no right to interfere.

It is also complained that the question of the issuing of these bonds was never submitted to the people to be voted upon. It was not necessary to do this. The act did not call for any such procedure. The section of the Code that calls for a vote by the people provides that in no case shall over ten per cent. of the amount of the assessed value of the property bonds be sold, and it is admitted that the legislature authorized this very thing in the Laws of 1916. If you refer to the method to issue these bonds you are at your rope's end for the reason that the code said you vote only when it is over a certain per cent and up to ten per cent and in no case where the bonds are over ten per cent of the assessed value. Another thing to be considered is this, the legislature says you may issue a certain amount of bonds.

If submitted to a vote the voters might say you shall not issue such bonds or any bond. If this had been the intention of the act in question is should have said providing that a certain per cent of the voters did not object.

A case somewhat familiar to the one in question is the case of *Griffith* v. *Mayor and Board of Aldermen of Vicksburg,* 58 So. 781. I believe that this case is decisive of this very point.

The second assignment of error raises the question that the amendment to the city charter is not an amendment for the reason that the same was never legally adopted. Section 3444 provides what shall be done to amend an existing charter other than code charters. The agreed statement of facts shows that the procedure to adopt same was as follows:

Same that is the amendment was proposed at one meeting of the board of mayor and aldermen and properly published in a newspaper in the manner provided by law. It was then sent to the governor and being approved by the attorney general and governor in the manner provided for by law was returned to the secretary of the city and was placed on the ordinance book of the city but not thereafter approved by the board of mayor and aldermen. Now lets see if the above section calls for anything else. The section says that the amendment shall be prepared which was done by appellee. The same was published properly so said the agreement, and after that the same shall be sent to the governor, etc. This was done. It is next agreed that the governor approved the proposed amendment. There is nothing said about objection being made to proposed amendment and as a matter of fact no objection was made to the amendment and the said amendment is not attacked on that ground. After being approved by the governor it was sent to the secretary and there recorded by him in the minute book. We contend that this is a strict compliance with the law and that the law required, the authorities cited by appellant not being to the point.

The third ground has no merit in it as the charter could say who should and could make an assessment and no matter who makes the assessment the board of mayor and aldermen passes upon the assessment.

The fourth assignment of error is equally without merit and will not be discussed by me further than to say that if a city has a right to build roads and take land for that purpose it certainly should nave the same right to take whatever land it is necessary to protect that road and might and should be considered a part of the road. It certainly would be foolish for the legislature or a charter to say you can have this land for a street but if it is necessary to have that street that you must do certain things to protect it and refuse to let you do what it is necessary to do, it would mean in the long run, that you are giving nothing. This view cannot of course be approved by any court. The fourth assignment of error loses sight of one point, and that is that there is no arbitrary assessment of the abutting property. It merely says that if you are improved to the amount of fifty per cent. of the cost of the sea wall you pay that much of the cost of the said sea wall, in front of your place.

The fifth assignment of error I believe was covered by us in the discussion of the fourth assignment of error.

The sixth assignment of error is absolutely without merit and if any such contentions as is here advocated is law what would become of the country? The objection there raised is that appellants, under the law, is not given a chance to object to where the sea wall would be placed. The kind of material to be used, the height of the wall, the thickness of same, etc. Now if the property owner had to be given a chance to express his views on this point I dare say that there would be as many different contentions as there are property owners, as it is a fact that every one on the Gulf Coast has a different idea as to the proper kind of sea wall to have and no two persons agree on this point. Assuming that the property owners was given this right, he was notified of the kind of material to be used, where the wall would be built, the thickness of the wall and the height of same, you would have at the appointed time every property owner meeting and each one expressing different views and ideas. In a course of time an ap-

peal would reach this court and then it would be up to this court to say where the wall should be built, thickness of same, etc., and I am quite sure that this court would not desire to pass on any such questions to say nothing of the fact that this is not a legal question. The sea wall can be built or the Gulf Coast will in the course of time dwindle to nothing.

ETHRIDGE, J., delivered the opinion of the court.

Complainants exhibited their bill in the chancery court of Hancock county, Miss., against the city of Bay St. Louis, alleging that the complainants are citizens and payers of the city of Bay St. Louis, and that the appellant Conrad Sick owns land situated on the beach front in said city, and that the appellant Octave Favre owns land in the city on a rear street of the city, and that the city of Bay St. Louis is undertaking to issue bonds in the sum of two hundred thousand dollars as empowered by chapter 287 of the Laws of 1916, without having submitted or offered to submit to the qualified voters of the city the question of whether said bonds shall be issued or not, the said amount proposed to be issued by them being in excess of seven per cent. of the assessed value of the property of the city of Bay St. Louis; that the assessed value of the property is one million six hundred thousand dollars; that the city is attempting to exercise this authority through five citizens who have been constituted or named by the mayor and board of aldermen as "bond commissioners" of the city with power to construct a sea wall by virtue of an amendment to the charter of the city of Bay St. Louis shown as exhibits to the bill of complaint; said city is a municipality operating under a special charter, under Laws 1886, chapter 297; that Exhibits B and C to the bill are not a part of the charter of the said city because they were never entered on the minutes of the board of mayor and aldermen, after being approved by the Governor, and are void because they attempt to place the power of assess-

ment of special taxes in the bond commission and that they could not delegate to the bond commission this power. They allege, further, that the city cannot construct an improvement such as a sea wall, arbitrarily fixing an amount to be collected from the party upon whose property it is constructed; that a sea wall is not in its nature a public improvement for which the city can levy a general tax. They further contend that the complainants have never received any knowledge, or notice, of the amount that they are to be assessed for the said improvements, and that they do not know the character or cost of said improvement, and that if the amendment to the charter is valid and improvements made that it would place an unknown burden on the complainants without notice, and that they would be unable to object to the same or complain until the said improvement is completed; that under the scheme proposed that fifty per cent. of the bonds are to be paid by the entire town for the construction of a sea wall on the privately owned property on the beach front; and that the property situated in the rear of the city would be required to pay a large proportion of the said bonds without receiving any benefit from the improvement, and that this would take the complainant's property without due compensation and without due process of law. The prayer of the bill is for a temporary injunction restraining the mayor and board of aldermen from issuing the said bonds and erecting the said sea wall, and for the declaring of the amendments to the charter void and a perpetual injunction against the city.

Chapter 287, Laws 1916, omitting the title and enacting and enforcing clauses, reads as follows:

"That the city of Bay St. Louis, Hancock county, Mississippi, be and is hereby authorized to issue bonds in the sum of two hundred thousand dollars, or so much thereof as may be necessary, at a rate of interest not exceeding six per cent. per annum, and levy a special tax to pay said bonds and interest upon all the property within its limits, not exceeding ten (10) mills on the dollar,

for the purpose of building a sea wall to protect the banks from caving and overflow from storms and tide water.''

This act is silent as to how bonds shall be issued, and is silent as to how the sea wall shall be constructed, not containing any machinery for either issuing the bonds or erecting the sea wall. Chapter 147 of the Laws of 1914 applies to all municipalities, and provides that where bonds are issued in excess of seven per cent. of the assessed valuation of the property of the municipality the question must be submitted to and ratified by the qualified electors voting at said election before such issuance shall be made. Chapter 287 of the Laws of 1916 is a mere enabling act in the nature of a charter amendment conferring additional power on the municipality; and, not having the machinery for the issuance of said bonds, must be construed in connection with the general law upon the subject, except as modified by the later act (and the later act does not modify this requirement of a bond issue, but does modify the ten per cent. limitation imposed by that act as a total amount which may be issued), the law of 1914 controls this bond issue. In other words, the city is not limited to a bond issue of ten per cent. of its assessed valuation, but may issue such bonds to the amount of two hundred thousand dollars. But this does not change the requirement that the question must be submitted to a vote of the qualified electors for their approval.

It being admitted in the agreed statement of facts that no such election was ordered or contemplated in the issuance of the bonds in question, and that no election was intended to be held on the question, it follows that the board was acting without authority, and that the injunction should have been granted. The case will therefore be reversed, with direction to grant the injunction against the issuance of the bonds until the same shall have been submitted to the qualified electors and approved by a majority of those voting in said election voting therefor.

Inasmuch as the case must be reversed and further proceedings had before the bonds can be issued, and as it

may be that litigation and delay will be saved by so doing, we will dispose of other questions in the record. There is no merit in the contention that the bond commission is unlawful and their acts void. They are at least *de facto* officers whose acts within lawful authority are valid under section 3473, Code 1906, and only the state can complain as to the questions of terms and tenure, etc.

There is no merit in the contention that the board of mayor and aldermen must readopt a charter amendment and enter it on their minutes after its publication and approval by the Governor and attorney-general. The first adoption by the board of mayor and aldermen with its publication and approval by the electors gave it life and its recordation on the ordinance book of the city after its approval by the Governor was all that was necessary.

There is no merit in the contention that the power of assessment could not be conferred on the bond commissioners by charter amendment. There is no constitutional assessor for municipalities.

There is no merit in the contention that a sea wall is not in its nature a public improvement for which a city can lay a general *ad valorem* tax on the whole property of the city. The city cannot arbitrarily assess special benefits against property owners for improvements, but such assessments must be reasonable, having reference to the benefit conferred; and before this assessment of benefits is made, notice must be given the property owner, with an estimate of the cost of the improvement to be made, with a right to submit evidence and make objections thereto.

Unless the city is primarily liable for the whole amount, with right to reimburse itself by the special assessment, the notice, hearing, etc., should be made before the bond issue is made. *Board of Mayor, etc., of Waveland* v. *Moreau,* 109 Miss. 407, 69 So. 214. The city has the power to condemn property for public use under its charter, and may exercise the power to erect a sea wall and acquire right of way, etc., and there is therefore no merit in the

objection as to this matter, nor will the sea wall if erected become private property.

It follows from what we have said that the charter amendment made Exhibit B to the bill presents a valid and workable scheme for the issuance of said bonds, if authorized by a vote of the qualified electors of the city. But Exhibit C (being another amendment to the charter) is not free from objection, and should be redrafted or abandoned in the issuing of bonds. It arbitrarly imposes one-half the expense of building the sea wall on the property owners abutting the improvement, regardless of the cost of construction and the actual benefit to be conferred. Under it the city cannot be made liable for more than one-half of the cost, even though the judiciary should decide that one-half of the cost of the improvement was an unreasonable burden on the abutting owners and confiscatory of his property; in which contigency there would be no method by which to raise money to pay all the bonds.

*Reversed and remanded.*