STINGILY *v.* CITY OF JACKSON.[*]

CENTRAL COTTON OIL CO. *v.* SAME.

(In Banc. June 8, 1925.)

[104 So. 465. Nos. 24970, 25091.]

1. STATUTES. *Clear and unambiguous provision of statute will be enforced although conflicting with provisions of prior statute, regardless of provision that it shall not repeal any other statutes relating to same subject-matter.*

   A provision of a statute, if it is clear and unambiguous, will be enforced although it conflicts with one of the provisions of a prior statute, and the later statute not only contains neither a special nor a general repealing clause, but expressly provides that it "shall not repeal any other statute relating to the subject-matter hereof."

2. MUNICIPAL CORPORATIONS. *Statute authorizing assessments for special improvements enforced although conflicting with prior statute.*

   The provision of chapter 194, Laws of 1924, that "municipalities operating under the said provisions of this act shall have authority to make special improvements and assess the cost thereof, either in whole or in part against the property abutting on the streets to be improved, said method of assessment to be determined upon as hereinabove provided, regardless of whether or not said municipalities may have been making said improvements under former laws and assessing the cost thereof in a manner different from that determined upon under this act, or paying for same out of the general improvement fund of said municipalities," will be enforced by the courts, although it conflicts with one of the provisions of chapter 260, Laws of 1912, notwithstanding the provisions of chapter 194, Laws of 1924, that "this act shall not repeal any other statute relating to the

subject-matter hereof, but shall be deemed to provide a supplemental, additional, or alternative method of procedure for the benefit of all municipal corporations in the state of Mississippi."

3. STATUTES. *Constitutional provision against reviving or amending law by reference to title only held not to refer to repeal or modification of statute because of conflict with provisions of later statute.*

The provision of section 61 of the state Constitution that "no law shall be revived or amended by reference to its title only, but the section or sections, as amended or revived, shall be inserted at length," has no reference to the repeal or modification of a statute because in conflict with the provisions of a later statute.

4. MUNICIPAL CORPORATIONS. *Assessment for paving held not to violate equality and uniformity rule.*

A municipality does not violate the equality and uniformity clause of section 112 of the state Constitution by assessing the entire cost of paving a street against property abutting thereon, when prior thereto it had paid a portion of the cost of paving other streets out of money raised by general taxation.

5. CONSTITUTIONAL LAW. *State not prevented from changing from one system of taxation or assessment for local improvements to another by equal protection of law clause of Fourteenth Amendment; equal protection of law clause of Fourteenth Amendment does not restrain state legislature in creation of local assessment districts; equal protection of law clause of Fourteenth Amendment is complied with if all property throughout assessment district is dealt with alike.*

The equal protection of the law clause of the Fourteenth Amendment to the Federal Constitution does not prevent a state from changing from one system of taxation or of assessment for local improvements to another, nor restrain a state legislature in the exercise of its discretion in the creation of local assessment districts, and is complied with if all property throughout the assessment district is dealt with alike.

6. MUNICIPAL CORPORATIONS. *Determination by subordinate agency of territorial district to be taxed for local improvement conclusive in absence of fraud or abuse of discretion.*

Assessment districts for local improvements may be created directly by the legislature, or the power so to do may be delegated to a subordinate agency, such as a municipality, and the determination of this subordinate agency, within the limits of the power delegated to it, of the territorial district which should be taxed for local improvement, is conclusive in the absence of fraud,

oppression, or some wrong constituting a plain abuse of discretion.

7. MUNICIPAL CORPORATIONS. *Assessment for paving other streets unauthorized.*

   Property abutting on one street cannot be assessed for payment of the cost of paving other streets.

8. MUNICIPAL CORPORATIONS. *Municipality may be empowered to assess entire cost of paving including intersections according to front-foot rule.*

   A municipality may be empowered by the legislature to assess the entire cost of paving a street, including its intersections, against property abutting thereon according to the front-foot rule.

9. CONSTITUTIONAL LAW. *Litigant cannot question validity, of provision of statute not affecting him, and which, if invalid, does not affect validity of remainder of statute.*

   A litigant cannot question the validity of a provision of a statute which does not affect him, and which if invalid does not affect the validity of the remainder of the statute.

   ETHRIDGE AND McGOWEN, JJ., dissenting.

---

*Headnotes 1. Statutes, 36 Cyc., p. 1074; 2. Municipal Corporations, 28 Cyc., p. 1106; 3. Statutes, 36 Cyc., p. 1073; 4. Municipal Corporations, 28 Cyc., p. 1105 (1926 Anno); 5. Constitutional Law, 12 C. J., sections 881, 892; 6. Municipal Corporations, 28 Cyc., p. 1122; 7. Municipal Corporations, 28 Cyc., pp. 1123, 1126; 8. Constitutional Law, 12 C. J., section 892; Municipal Corporations, 28 Cyc., p. 1157; On assessment for improvements by the front foot rule, see notes in 17 L. R. A. 330; 28 L. R. A. (N. S.) 1124, L. R. A. 1917D, 372; 25 R. C. L., pp. 144-152; 3 R. C. L. Supp. 1406, 4 R. C. L. Supp. 1573; 9. Constitutional Law, 12 C. J., section 177.

APPEAL from chancery court of Hinds county.

HON. V. J. STRICKER, Chancellor.

Suits by C. R. Stingily and by the Central Cotton Oil Company against the city of Jackson. Judgments for defendant, and plaintiffs appeal. Cases considered together on appeal. Judgments affirmed.

*Chambers & Trenholm,* for appellant Stingily.

The original bill directly attacks the constitutionality of chapter 194 of the Laws of 1924, in that it attempts to permit such a change in the method of making assessments for street improvements, and in that it attempts to permit all of the cost of improving a street intersection to be assessed against the property abutting on a street to be paved without reference to the fact that such intersection is equally a portion of another street, and in that it attempts to permit indefinite portions of the salaries of municipal employees and other similar items of general governmental expense to be included in the cost of the improvement, and in that it attempts to permit the collection of the delinquent tax penalty upon the entire balance of an improvement assessment upon default in the payment of any one of the installments in which it may be paid.

Appellee's demurrer asserts the plenary power of the legislature in the premises, without limitation, in the matters involved, by the Constitution of the state. Upon the hearing it was agreed that the demurrer should be considered extended so as to include the Federal Constitution. The several assignments of error are all to the effect, that the court erred in not holding the act unconstitutional.

In *Nugent* v. *Jackson,* 72 Miss. 1040, 18 So. 493, speaking of these special assessments, the court reaffirmed the case of *Macon* v. *Patty,* 57 Miss. 378, to the effect that: "These assessments are not within the unrestricted discretion of the legislature, but are subject to many and just limitations, which the courts will enforce."

It is true that the court also stated that it was too late to question the validity of such legislation generally, with the power to levy and apportion the expense of the improvement. It is also true that the settled rule seems to be, as prescribed in *Hagar* v. *Reclamation District,* 111 U. S. 705. This rule, however, has some limitations.

Prior to the passage of chapter 260, Laws of 1912, while the whole cost of constructing or repairing sidewalks seems to have been a charge absolutely upon the abutting property (Code of 1906, section 3413), that was not so as to the cost of paving streets (Code of 1906, section. 3411). By the act mentioned (chapter 260, Laws 1912) this was made plain (section 16 as to sidewalks and section 4 as to improvements), it being recognized that paving had theretofore been done under several different plans as to payment by requiring that the plan theretofore adopted should not be changed, "to the end that all persons may be compelled to pay for the same character of special improvements on an equal basis."

Under that act it was held in *Jackson* v. *Doxey*, 91 So. 348, and reaffirmed in *Lumber Company* v. *Hattiesburg*, 95 So. 250, that a city could not change from a plan of assessing one-third of the cost of street improvements against the property on each side of the street and paying one-third itself, to the plan of assessing one-half against the property on each side of the street and paying nothing itself. That holding was of course based on the statute, but the court did not say that a city could as a constitutional proposition, make such change in the absence of the statute. Chapter 224, Laws of 1922 (the Act approved March 27, 1922, referred to in the Doxey case but not passed upon) had not been repealed when the Hattiesburg case was decided, and, as it does not directly permit a changing of plan of making assessments, and does directly state that it does not repeal any existing law, but is an additional power, and as the court did not mention it in the Hattiesburg case, it is evident that the court did not consider that it gave a city the power to change its plan of making such assessments.

Chapter 260, Laws 1912, having prohibited a change in plan of assessments, and chapter 224, Laws 1922, not having permitted such change, and the former having directly repealed or amended all then existing laws upon the subject, the two together, with a few minor amend-

ments to the former not touching the questions here in-, volved, constituted all the authority for the making of such improvements and assessments, and prohibiting the changing of the plan first adopted, hence appellee is without lawful authority now to change the plan of as- sessing the cost of such improvements, unless it be found in chapter 194, Laws of 1924.

Ever since the city of Jackson has been paving streets it has had the power to assess the entire cost of improve- ments to the abutting property-owner (except that having elected to assess only two-thirds for many years the act of 1912 prohibited it from thereafter changing such plan) unless, when it first elected to pay one-third of the cost out of the general improvement fund, which fund was created by a direct *ad valorem tax upon all taxable prop- erty* in the city, it instituted a scheme of direct *ad valorem* taxation for the payment of one-third of the cost by the entire taxable property of the city, which scheme can- not now be changed, even under the Act of 1924, be- cause some property would pay more than other prop- erty in taking care of that one-third of the cost, contrary to the plain provisions of section 112 of the state Con- stitution, and not "to the end that all persons may be compelled to pay for the same character of special im- provements on an equal basis," as required by chapter 260, Laws of 1912, which was not repealed by chapter 194, Laws of 1924, the latter being: "An Act providing a supplemental, additional and alternative method of making local improvements," in which it is provided that: "This act shall not repeal any other statute re- lating to the subject-matter hereof . . . ." (Sec tion 12, chapter 194, Laws 1924.)

In other words, appellant's property is now paying its share of the city's one-third of the cost of paving other streets and entire cost of paving street intersec- tions on other streets, and will continue to do so for some years, whereas, if the entire cost of the proposed improvement is assessed against the property on Rose-

neath street the property-owners thereon, including appellant, will be required to pay not only the present *ad valorem* tax for such other street paving, but an additional tax for this other one-third of the street which no other property in the city will be required to contribute to. Other property-owners, on other streets, having had appellant's property contribute to a part of the expense of paving in front of their property, will not be required to contribute to a part of the expense of paving in front of his property.

It is true that special improvement taxes, as a general rule, are not controlled by the uniformity and equality clause of the Constitution, except possibly as between the properties involved, but see 37 Cyc. Taxation, 735-737.

The theory of all the decided cases holding special improvement taxes not within the equality and uniformity provisions of state Constitutions, such as is contained in section 112 of the Constitution of Mississippi, seems to be that there is a direct improvement to the property taxed which may not be in proportion to its value. This is very true as applied to drainage districts, where part of the property before drainage may be worthless, and after drainage, the most valuable in the district, while other property in the district may suffer very slightly from lack of drainage, and benefit very slightly therefrom. It would be manifest injustice to require each acre in the district to pay the same tax under those circumstances. But the tax heretofore levied upon appellant's property for paving of other streets was not for the payment of a direct improvement to that property, and was in direct proportion to its value. In other words, the city, by availing itself of the privilege of taxing all property in the city for a portion of the expense of paving one street, has taken the improvement out of that class which should not be affected by the uniformity and equality provisions, and placed it in the class in which it should be. And has not the development of the automo bile brought about a situation where it can no longer be

said that paving a street is only an improvement to the property upon that street.

We are no longer living in the horse age, when only the main streets, in the shopping districts were paved, but have advanced to the point where the public health, the public safety and the public business almost requires that all streets in a city of more than a few thousand persons be paved. What would the police traffic squad do in a city like Jackson on a rainy day, with several thousand automobiles stuck in the mud? What would its highly efficient automobile fire department do if it stuck in the mud whenever it went into the residence districts in bad weather? How rich would the doctors be, and how ill the population, if the thousands of automobiles upon the streets were stirring up the dry dust of Summer on miles of streets? Verily, "The World Do Move."

If we are correct in our premises that the injection of a direct *ad valorem* tax upon all property, into the scheme of paying for street paving, by election of the city, removes the whole matter from the strict limitations of an assessment for a local improvement then section 112 of the state Constitution applies, for it applies to municipal taxation. *Adams* v. *Bank,* 75 Miss. 701, 23 So. 395; *Adams* v. *Bank,* 78 Miss. 532, 29 So. 402.

It is true that the courts, including this court, have held that an assessment for paving as a local benefit is not void because the property so assessed is also assessed under a general *ad valorem* tax in aid of, or for a part of the cost of, the same improvement, but we are unable to find any case upon the exact point here involved, i. e. whether or not the inclusion of a general tax on all prop erty for the payment of a portion of the cost of an otherwise local improvement operated to remove the strict limitations applicable to a purely local improvement assessment, bringing the whole matter under the much broader provisions as to equality and uniformity of taxation. The holding above mentioned was that the assessment was not void as double taxation, because of the general tax also levied. With that we agree. In fact, we

·are contending that appellant's property should be taxed exactly that way, but that all other property in the city should also be assessed with the general tax in aid of the improvement, because his property has been so assessed in aid of all other like improvements heretofore made throughout the city.

We submit, therefore, that section 12 of chapter 194, Laws of 1924, in that it attempts to permit the city of Jackson to change the method of making assessments for street improvements, is violative of section 112, of the state Constitution, and therefore void, and that the authority of the city in that respect is limited by chapter 260 of the Laws of 1912, as amended, which is still in force.

The next proposition is, whether denying appellant the right to have all other taxable property in the city contribute to a portion of the cost of paving in front of his property, after he has contributed to the payment of a portion of the cost of paving in front of other property, is in violation of the equal protection of the laws clause of the Fourteenth Amendment to the Federal Constitution.

Along with that goes the related proposition as to whether compelling appellant to pay for paving street intersections on his street, notwithstanding he has paid part of the cost of paving intersections on other streets, and without reference to the fact that such intersections are equally portions of other streets, is denying him the equal protection of the laws, under the same clause. While there is considerable doubt, upon the face of the Act, as to the city having the right to assess the cost of intersections along with the rest of the improvement, it is asserting that right. Section 5, chapter 194, Laws of 1924.

If the improvement can include something not in front of the property, and which is equally a portion of another street, why could it not include something in another portion of the city? If appellant can be assessed with any portion of the cost of paving an intersection,

why should not the property on the intersecting street be similarly assessed? But there is no provision for making such an assessment against that other property. Then the most progressive property-owners, who have their street paved first, must pay for paving a portion of the other street. Of course, this question of street intersections, for which the city has heretofore paid, is equally bound up with the one-third of the other costs in the equality and uniformity question, but this is a different matter. The one-third proposition is bound up with the intersection matter in this equal protection of the laws question. 12 C. J., 1156, Constitutional Law, sec. 891; *Thomas* v. *K. C. Ry. Co.* (C. C. A.), 277 Fed. 708; *Myles Salt Co.* v. *Iberia Drainage Dist.*, 239 U. S. 478; *K. C. So. Ry. Co.* v. *Road Impv. Dist.*, 256 U. S. 658; *Thornton* v. *Road Impv. Dist.*, 291 Fed. 518 (Quoted); *Locke* v. *Lumber Co.*, 119 Miss. 783, 80 So. 175; Section 12, chapter 194, Laws of 1924.

The first question to ask here is, can the paving of a street or part of a street in a municipality be considered as an independent, separate and distinct public improvement without relation to the paving of intersecting or connecting streets? If appellants' property could be taxed—and it was taxed—for the paving of other streets both in near and remote portions of the city, then we submit that the question should be answered in the negative. And, considering that paved streets are somewhat like railroads, in that if the paving is in short, disconnected strips, it is practically useless to the general public, or, like a chain, no. stronger than its weakest link, we submit that the entire paving scheme of a city is but a single public improvement. If that is not true, then no property should be taxed for paving except immediately in front of it.

The Legislature of 1912 saw that point, and enacted chapter 260 accordingly. The legislature of 1924 evidences, in the section of chapter 194 above quoted, an entire disregard of the rights of property-owners in a municipality who have been paying for the paving of streets

not in front of their property, then such payment was made under legislative authority.

There are two other minor matters we desire to call attention to. First, that by section 5 of the Acts of 1924, it is provided: ''All engineering and inspection costs, including a proper portion of the compensation, salaries and expenses of the engineering staff of the municipality, properly chargeable to any improvement, shall be deemed a part of the cost of the improvement.''

The ''compensation, salaries and expenses of the engineering staff of the municipality'' are a portion of the general governmental expense of the city, paid out of the general fund, raised by a direct *ad valorem tax* upon all property in the city. If appellant's property is to be again taxed for that salary it is double taxation. Or, could you say that if any portion of this so-called special improvement tax was for general governmental expense, it must all be so considered? In the famous case of *Texas* v. *White,* the United States supreme court held that a sale for taxes, any portion of which was levied in aid of rebellion, was entirely void. In that event all of the tax proposed to be levied upon appellant's property would be subject to the equality and uniformity clauses of the state Constitution, and to the equal protection clause of the Federal Constitution, under practically every decided case, and the act in question would undoubtedly be void.

Second, if a property-owner has not paid the assessment in full within ninety days from confirmation thereof, he shall be deemed, under section 7 of the act, to have elected to pay in the ten installments therein provided. Under section 8, failure to pay any installment shall result in the penalty of ten per cent provided for all other delinquent taxes, upon the unpaid balance of the assessment, only the delinquent installment can be collected, in view of chapter 157 of the Laws of 1924, approved prior to chapter 194.

The legislature has done its best to make the assessments a tax. We do not assert that this penalty propo-

sition is unconstitutional, but it does indicate the general disregard of the legislature of 1924 of all law, constitutional or otherwise, in its consideration and adoption of the act complained of.

In view of the several matters advanced against the act in question, we respectfully submit that in so far as it attempts to permit the doing of the things complained of, it is violative of both the state and Federal Constitutions, and should be condemned.

*Watkins, Watkins & Eager,* for appellant, Central Cotton Oil Co.

The question presented by this appeal is whether the appellee, the city of Jackson, has a right to repave and resurface a street and charge the entire cost thereof to the abutting property-owners under chapter 194, Laws 1924, when the city before that time had adopted the plan of repaving and resurfacing other streets in the city of Jackson and paying the entire cost thereof out of the general improvement fund, and taxing no part thereof as a special assessment against the abutting property-owners. An answer to this question involves the construction and constitutionality of chapter 260, Laws 1912 and chapter 194, Laws 1924.

By chapter 260, Laws of 1912, municipalities are given power in the discretion of the mayor and board of aldermen to require special improvements to be made on the whole, or any part of any public street, lane or alley within the municipal limits and tax the costs thereof to the property-owners whose property joins such streets, etc., by what is known as the front-foot rule. The act provides that if the adjoining property-owners fail to make the improvement within a certain time after notice, etc., the commissioner may be required by the municipality to proceed to do the work.

The words "special improvement . . . only includes the construction of improvements on streets and not repairs of same," but when applied to sidewalks, it

shall include both the construction and repair of same, and this was the construction adopted in *Stevens* v. *Hattiesburg,* 133 Miss. 824. Now see, section 4, chapter 260, Acts of 1912.

This court in construing this section held in *City of Jackson* v. *Doxey,* 128 Miss. 618, that where the city had adopted a plan of paving its streets and paying one-third of the cost thereof out of the general improvement fund, and assessing two-thirds of the cost thereof to abutting owners, it could not thereafter change its plan, so as to assess the entire cost to abutting owners on streets thereafter paved; and in *Firm Lumber Co.* v. *City of Hattiesburg,* 133 Miss. 808, that where the city had adopted a plan of paying the entire cost of street paving out of the general fund, it could not thereafter change the plan and assess the cost to abutting property-owners on streets thereafter paved.

On April 5, 1924, the legislature passed chapter 194, Laws of 1924, entitled "an act providing a supplemental, additional and alternative method of making local improvements in municipalities, authorizing and providing for special assessments for the cost thereof."

Under the Act of 1924, the property-owner is given no opportunity to construct the special improvements authorized by the Act of 1912, it being contemplated that such special improvement when required shall be done by the municipal authorities and the cost thereof, including certain engineering and overhead costs, charged to the abutting owner according to what is known as the front-foot rule. The engineering and overhead costs could not be charged to the abutting owner under the Act of 1912. *Langstaff* v. *Durant,* 122 Miss. 471. There are other provisions in the Act of 1924 somewhat different from the Act of 1912.

One of the radical differences is embraced in section 12 of the Act of 1924, which is as follows: "This act shall not repeal any other statute relating to the subject-matter hereof, but shall be deemed to provide a supplemental, additional or alternative method of pro-

cedure for the benefit of all municipal corporations in the state of Mississippi.''

It is contended by the city that the Act of 1924 provides an additional or alternative method of making public improvements of the character here in question, and that in proceedings under that act the prohibitions and limitations contained in section 4 of the Act of 1912, are eliminated, or at least, are not applicable.

It will be seen that under both acts the municipal authorities are vested with the discretion of determining whether the special improvement shall be made out of the general fund, and whether any part of the cost thereof shall be assessed against the abutting property-owners; and that the general purpose and scheme of the acts are the same, the principal difference being that under the Act of 1912, the property-owner in the first instance is given an opportunity to make the special improvement, when and if it is determined to assess the cost thereof against him, while under the Act of 1924, he is not authorized to do this. The other principal difference between the two acts is that under section 4 of the Act of 1912, a plan of paying for the special improvement when once adopted, must continue in force, while, under section 12 of the Act of 1924, no such restriction is imposed.

(I)    Appellant first contends that the restrictions and limitations imposed upon municipal authorities by section 4 of the Act of 1912, are not eliminated or repealed by section 12 of the Act of 1924, and that such restrictions and limitations still operate upon special improvements of the character in question.

It will be noted that section 4 of the Act of 1912 is general in terms, and applies to all special improvements by municipalities ''to the end that all persons may be compelled to pay for the same character of special improvements on an equal basis,'' and that its purpose ''was so far as practicable to insure uniformity and equality of taxation by municipalities in the making of special improvements on streets.''

The legislature was careful to say in section 12 of the Acts of 1924 that, "it shall not repeal any other statute relating to the subject-matter hereof." Certainly chapter 260, Laws of 1912, and section 4 of that Act relates to the same subject-matter and covers the same grounds as the Act of 1924. Certain it is that the legislature was careful not to repeal that act, and wrote into the statute that provision, so there could be no possible basis for the contention that section 4 of the Act of 1912, was expressly repealed or repealed at all by the Act of 1924, except by implication.

To say there is a repeal by implication would favor a repeal by implication over the express declaration of the legislature that the Act of 1912 should not be repealed. We are not unmindful of the rule that there may be a repeal of a statute by implication in certain cases, but we know of no rule of construction, nor any case holding that a repeal by implication arises over the express declaration of the law-making body, that such repeal shall not take place, especially where the statute can be given any other reasonable construction.

A repeal by implication is said to take place where the latter act is repugnant, or in irreconcilable conflict with the prior act; where a statute covers the whole subject-matter of an early act and it was intended to be a revision or a substitution therefor, but that if any part of the earlier act can stand, it is not repealed; and that the intent to repeal must be very clear; that they are not favored and will not be indulged if there is any other reasonable construction. *Asher* v. *Moyse,* 101 Miss. 36; 25 R. C. L., 914, 921.

A familiar rule of statutory construction is that significance and effect shall, if possible, be accorded to every section, clause, work, or part of an act, and in order to do this, all the language of the act must be considered and brought into accord, if possible. *Asher* v. *Moyse,* 101 Miss. 36, 26 R. C. L. 1004, *et seq.,* 1011, *et seq.*

If we give effect to the legislative declaration in this case that the Act of 1912 is not repealed, then the repeal

cannot be said to arise, unless there is irreconcilable conflict between two acts. There is no such conflict. The Act of 1924 has full field of operation, if it is given prospective effect and permitted to apply to special improvements in cities where the limitations imposed by section 4 of the act of 1912 can have no operation.

We have pointed out that under the Act of 1912, no authority was given municipalities to repair streets and charge the costs thereof to abutting owners, nor was there any authority given to improve squares and parks and charge the costs thereof to abutting owners. Under the Act of 1912 the city had no authority to lay sanitary and storm sewers in any street, and certainly none to lay such sewers in any square or park and charge the costs thereof to the abutting owners. The city had no authority of any kind under the Act of 1912 to provide lighting or white way systems at the cost of the abutting owners, yet all of these may be done under the Act of 1924. Therefore, we say in the face of the express legislative declaration that the Act of 1912 is not repealed; it should not be assumed that there is irreconcilable conflict between section 12 of the Act of 1924, in which it is said in effect that the Act of 1912 is not repealed and that part of section 12 of said act which in effect says that certain part of the Act of 1912 shall not apply to proceedings under that act.

Both statutes have a field in which to operate and both can be given a fruitful field for service. The reasonable and proper construction of section 12 and one that would give effect to the substance of its provisions, would be to hold that though a municipality in the paving of streets and construction and repairing of sidewalks had heretofore proceeded under the limitations imposed by section 4 of the Act of 1912, that when it came to the repair of streets as that term is generally understood, improvements of squares and parks, construction of sanitary sewers in streets, squares and parks; construction of lighting or white way systems (all of which could not be done under the Act of 1912, and charge the abutting

owner, but which may be done under the Act of 1924);
that such additional things as are authorized by the Act
of 1924 might be done under that Act, notwithstanding
the paving of streets and construction of sidewalks had
theretofore been done under the Act of 1912, and should.
thereafter be done under the Act of 1912. As applied to
repairs to streets and special improvements on squares
and parks, sanitary sewers, lighting systems, etc., sec-
tion 4 of the Act of 1912 was not to operate. As to the
paving of streets repaving of streets, construction and
repair of sidewalks, section 4 of the Act of 1912, was to
remain in full force and effect. Such a construction of the
act would give harmonious effect to all the provisions of
both acts and would permit all clauses and sections of
section 12 of the Acts of 1924, to be operative and effec-
tive. Whereas, the other construction would have the
effect to repeal the limitations imposed by section 4 of
the Act of 1912, notwithstanding the legislative declara-
tion that the same was not repealed.

(II) If, however, we are mistaken in this view, and
the court holds that section 12 of the Acts of 1924 does
away with the restrictions and limitations for repaving
and resurfacing streets, and repeals and amends section
4, Act of 1912, in this regard, then we respectfully sub-
mit that section 12, Act of 1924, runs counter to section
61 of the Constitution, providing: ''No law shall be re-
vived or amended by reference to its title only, but the
section or sections, as amended or revived, shall be in-
serted at length.'' Sections of the Act of 1912 are amend-
ed and changed by the Act of 1924 in violation of section
61 of the Constitution.

It is immaterial that the act professes to be an inde-
pendent act, and does not purport to amend the act of
1912. It adds new provisions and in section 12 mingles
the new statute with the old, and under the rules constru-
ing similar constitutional amendments, it must fail. 26
Am. & Eng. Ency. of Law, 707; *Board of Education* v.
*Moses,* 51 Nebr. 288; *German American Inc. Co.* v. *Min-
den,* 51 Neb. 874; 25 R. C. L. 874; *Seay* v. *Plumbing &*

*Metal Co.,* 101 Miss. 835; *Re Fisher,* 98 Fed. 86; *Copeland* v. *Pirie,* 26 Wash. 481, 90 Am. St. Rep. 769; *Galpin* v. *Chicago,* 269 Ill. 27; L. R. A. 1917B 176.

The situation here is, in principle, the same as that disclosed in *Lyons* v. *Police Pension Bd.,* 255 Ill. 139, 99 N. E. 337.

We respectfully submit that the city does not have the power under the Act of 1924, to change the method of construction of special improvements involved in this case; section 12 should not be construed, for the reasons hereinbefore first pointed out as being amendatory or changing the rule prescribed by section 4 of the Act of 1912, so far as the same relates to the character of the improvements here in question; but if mistaken in this, and the construction contended for by the city is to prevail, then it is respectfully submitted that section 12 of the Act of 1924 must fail, because it runs counter to the inhibition contained in section 61 of the state Constitution.

*Green, Green & Potter,* for appellee.

This case involves the constitutionality of chapter 194 of the Laws of 1924, wherein the municipal authorities of Jackson were authorized as to the future to assess the entire cost of paving against abutting owners and to abandon a practice which had theretofore obtained of taking care of one-third of such cost by general taxation as pointed out in *Jackson* v. *Doxey,* 91 So. 348, and *Firm Lumber Co.* v. *Hattiesburg,* 95 So. 250.

The legislature of this state saw fit to change the method of assessment and for the future to authorize an assessment which allowed the entire cost to be apportioned, and that whereof complaint is made is that Stingily as a taxpayer in Jackson has, in common with other taxpayers, contributed in the past toward the payment for some street pavements. Most of the pavements in Jackson, or, at least a large proportion of them so thus constructed have by constant use become worn.

Their replacement is shortly necessary. In other terri-
tory, development companies have become active and
are seeking that their streets should be paved and the
municipality while willing to pave, if the entire cost is
placed on the abutting owner, has been compelled to
refrain from so paving by reason of the iron-clad rule
laid down in the law of 1912, under which that which
was once done fixed policy as to the entire future and
precludes any variation in the method of assessment, ir-
respective of the exigencies of the situation.

In short, due to the advance in the size of the cities,
in the demands of the cities, and in the conditions where-
under the citizens must be served, there has grown up a
condition wherein flexibility is requisite, absolutely, to
popular protection, and that which is herein contended
is that by the passage of a legislative enactment in 1912,
the legislature of that year has perpetually consigned its
successors to impotency in conservation of the people's
demands. Such is not the law. The welfare of the peo-
ple is the highest law, and primarily there is a miscon-
ception upon the part of appellant in conceiving that he
is possessed of a fixed right in a rule of law. Such rigid-
ity is not consonant with progress, nor in accordance with
the Constitution. Hamilton on Special Assessments, sec.
60; *Smith* v. *Aberdeen,* 25 Miss. 461; *Harrison* v. *The
Mayor and Council of Vicksburg,* 3 S. & M. 585; *Godden*
v. *Crump,* 7 Leigh. 120.

There is nothing in the Constitution which declares
that all taxes shall be assessed *ad valorem,* or which
denies to the legislature the power of levying specific
taxes. Nor is there any provision in that instrument de-
claring that all taxes for special improvements shall be
equal and uniform.

Every owner of property situated on a street where
the improvements are made derives a peculiar benefit
from the improvements made in front of his property,
distinct from that which he enjoys in common with the
rest of the community; and as the tax applies equally
upon all owning property of the description assessed, we

see no valid objection against enforcing it. *Goddard, Petitioners, etc.,* 16 Pick. R. 504. And this decision is approved in *Adams* v. *Kuykendall,* 83 Miss. 586. Note again its approval in *Nugent* v. *Jackson,* 72 Miss. 1055; *Williams* v. *Cammack,* 27 Miss. 209; *Alcorn* v. *Hamer,* 38 Miss. 653; *Daily* v. *Swope,* 47 Miss. 367; *Vassar* v. *George,* 47 Miss. 721; *Macon* v. *Patty,* 57 Miss. 378; *Nugent* v. *Jackson,* 72 Miss. 1056; *Chrisman* v. *Brookhaven,* 70 Miss. 477.

The power to pave and otherwise improve streets is a continuing power, unless restrained by express words, and does not cease by being once executed, and the fact that certain charters expressly grant authority to re-pave, as well as pave, is not conclusive that the legislature intended to abrogate the rule that the right to make assessments for local improvements is a continuous one, and that a street has been once paved and property benefited thereby has been assessed for the cost thereof, does not render invalid an assessment upon the same property for the re-paving of the street with an improved pavement. The legislature has the same power to charge abutting property with the cost of a second pavement as it has to so charge the cost of a first pavement; and such an act is not of itself unjust or unreasonable. And if the first paving of a street is a special benefit to the front proprietor, justifying the imposition upon him of the expense, so the removal of an insufficient pavement and the making of a new and sufficient one in its stead, is a matter of special benefit to the front proprietor, although it may be of general utility. Even a charter provision that a street may be improved at the expense of the abutting owners, and that when so improved it shall not be so again improved, does not constitute a contract between the state and the owner who had paid for the improvement which cannot be impaired or repealed by subsequent litigation. *Ladd* v. *City of Portland,* 51 Pac. 654; *State, Agens, Pros.* v. *Mayor etc., of Newark,* 37 N. J. L. 424; 2 Elliott on Roads & Streets, sec. 679; *Robinson* v. *Rippey,* 12 N. E. (Ind.) —; *Bradley* v. *McAtee,* 70 Ky. 672.

Counsel has not found any direct decision wherein there is imposed upon the legislature a constitutional obligation to refrain from changing the method of assessment when the public welfare demands an alteration of this sort. The legislature is the judge, and there is no constitutional inhibition against the exercise of a power of this character. On the contrary, it is expressly left with the legislature alone to determine matters of this character, and, therefore, when the power of the legislature is sought to be stricken down some express provision of the Constitution must be produced which is said to be violated.

The question of equality and uniformity under section 112 of the Constitution has no applicability whatsoever to the special assessments. Their theory is entirely different and ever since *Smith* v. *Aberdeen, supra,* they have been sustained uniformly and there is no obligatory mandate upon the legislature that they refrain from serving the people in virtue of the fact that the legislature at a prior time had enacted a law which was then wise, but has since become otherwise.

This was a question for the legislature, and one wherewith this provision of the Constitution had nought to do. This is the main point at issue and being the main point, the legislature could properly determine those cost elements which were to be integrated, if they represented in truth and in fact cost elements. They do, beyond controversy, and so doing, no complaint can of them be made.

We have examined all decisions and all text-books cited, and relied on, by opposite counsel, but up to now have not found any case that directly or indirectly deprives the legislature of the paramount power held valid in *Smith* v. *Aberdeen, supra,* and reaffirmed since that time, time and yet time again.

*W. E. Morse* and *W. A. Scott, Jr.,* also for appellee.

(I) CONSTRUCTION OF THE STATUTE. Appellant challenges the action of the city on the theory that section

4, chapter 260, Laws of 1912, is still in force and effect. The supreme court upheld the legality of this section in *City* v. *Doxey,* 91 So. 349, *Firm Lbr. Co.* v. *Hattiesburg,* 95 So. 250; *Firm Lbr. Co.* v. *Hattiesburg,* 98 So. 145, but the court will see that in each of these decisions the act was construed as written. No constitutional question was involved.

Appellant's contention is that chapter 194, Laws of 1924, does not repeal section 4, chapter 260, Laws 1912; appellant states that it is unconstitutional, being in contravention of section 61. We would like to call the court's attention to the fact that the method prescribed in chapter 194, Laws 1924, is supplemental, alternative and different from chapter 260, Laws 1912. It would not be necessary to repeal chapter 260, Laws of 1912. We cite as authority City of *Jackson* v. *State,* 59 So. 873, construing a law bringing the commission form of Government into being, with reference to said section 61. A reading of chapter 194 of Laws of 1912, shows that the method prescribed in said chapter is complete in itself.

(II)   We have shown that the act is constitutional and is legal and binding; we will now examine the law to ascertain whether or not re-surfacing and re-paving could be done under said law by the municipality and charge the abutting owner with the cost of the same. See section 2, chapter 194, Laws of 1924, Subdivision A.

Where this legislative authority is given to the municipality there is practically no question as to its right to re-surface and re-pave. 25 R. C. L. 103; *Broadway Baptist Church* v. *McAtee,* 8 Am. Rep. 480.

See also, *McCormick* v. *Patchin,* 53 Mo. 33, 14 Am. Rep. 440, and note holding that the power to grade and improve streets is a legislative power and is a continuing one unless especially restricted by the municipal charter. It may be exercised from time to time as the need of the corporation may require and of the necessity and of the expediency of its exercise of corporate authority therein the court is usually the judge. It follows that the power to compel property-owners to pave streets adjoining

their lots or the power of paving at the property-owner's expense once exercised is not exhausted for such owners may be compelled to re-pave or to pay for re-pavement when required by municipal authorities.

The authorities seem to be uniform that where the legislative authority is given, the municipality may proceed to re-surface and charge the property-owners with the cost thereof. The question here under consideration is one that deals with streets in a municipality; the municipality has been given supervision over streets, over special improvements and the courts have held that unless there has been fraud or abuse of its powers by the municipality the court will not inquire into or interfere with the discretionary power of the municipality. See *Macon v. Patty,* 57 Miss. 378; *Nugent v. Jackson,* 72 Miss. 1040.

The only argument that appellant can make is that he is being unjustly imposed upon on account of the fact that the city of Jackson has heretofore paid for all of the re-paving and re-surfacing, but if the court will examine section 2, chapter 260, Laws of 1912, being section 5942 of Hemingway's Code, he will see that under this act the definition of special improvements included the construction and the improvements on the street but not the repair of the same, so that when the legislature saw this was working an unjust burden on the taxpayers of the municipality when the local property was benefited by the improvement, they authorized this change. The wisdom of this change is very apparent in the present case. The Central Cotton Oil Company has more wagons hauling in and out of their place of business than practically any other business establishment in the city of Jackson. The traffic is to such an extent that the wood block paving has been ground to powder and there is nothing except the base of the old pavement. Manifestly, they would be benefited by the re-surfacing and re-paving more than would any other resident of the city of Jackson. We say that this is not an unjust burden on them. The court has held that local improvement

does not come within the constitutional prohibition as to taxes being uniform and equal.

We think that the decision of the lower court was manifestly right and that the case should be affirmed.

Argued orally by *E. E. Trenholm* and *Paul Chambers,* for appellants, and *Garner W. Green* and *W. E. Morse, Jr.,* for appellee.

SMITH, C. J., delivered the opinion of the court.

The question presented for decision in these cases is the validity *vel non* of two ordinances of the city of Jackson, providing, in the Stingily case, for the paving of one of its streets, and in the Central Cotton Oil Company Case for the repaving and resurfacing of a portion of another of its streets, and apportioning the entire cost thereof, including the cost of street intersections, to the lots abutting thereon according to the front-foot rule.

Prior to the adoption of these ordinances the city had paid the entire cost of repaving and resurfacing its streets, and had assessed only two-thirds of the cost of paving its streets against the lots abutting thereon, the remaining one-third, together with the entire cost of paving the street intersections, being borne by the city. The city obtained the money with which to pay its portion of the cost of paving, repaving, and resurfacing its streets, either by general taxation or by the sale of bonds to be paid when due by money derived from general taxation.

The objections raised to these ordinances are that they violate section 4, chapter 260, Laws of 1912, sections 61 and 112 of our state Constitution, and the Fourteenth Amendment to the Federal Constitution. Under section 4, chapter 260, Laws of 1912, the city was without power to change from its former method of paying for paving its streets to that here adopted. *City of Jackson* v. *Doxey,* 128 Miss. 618, 91 So. 348; *Firm Lumber Co.* v. *City of Hattiesburg,* 132 Miss. 1, 95 So. 250.

At the session in 1924, the legislature enacted chapter 194 of the Laws of that session, which seems to provide a complete scheme for the paving, maintenance, and repair of streets, and while section 12 thereof provides: "This act shall not repeal any other statute relating to the subject-matter hereof, but shall be deemed to provide a supplemental, additional or alternative method of procedure for the benefit of all municipal corporations in the state of Mississippi,"—the section further provides: "Said municipalities operating under the said provisions of this act shall have authority to make special improvements and assess the cost thereof, either in whole or in part against the property abutting on the streets to be improved, said method of assessment to be determined upon as hereinabove provided, regardless of whether or not said municipalities may have been making said improvements under former laws and assessing the cost thereof in a manner different from that determined upon under this act, or paying for same out of the general improvement fund of said municipalities."

This last provision of the statute is unambiguous, clearly grants to municipalities the right which the appellee here seeks to exercise, and must be enforced although it may be in conflict with prior laws which the legislature did not intend to thereby repeal. Where statutes conflict the one last enacted controls. Conceding that this provision of chapter 194, Laws of 1924, repeals, as it seems to do, that portion of section 4, chapter 260, Laws of 1912, with which it conflicts, section 61 of our state Constitution which provides, "No law shall be revived or amended by reference to its title only, but the section or sections, as amended or revived, shall be inserted at length," is not violated thereby. The latter statute is complete on its face, can be understood and applied without reference to the former, and repeals or modifies the former only by implication; and such repeals are not within the purview of section 61 of the Constitution.

The ground of the objection that these ordinances violate section 112 of our Constitution, and the Fourteenth Amendment to the Federal Constitution, is that they impose a greater burden on property abutting on the street here to be paved than was imposed on property abutting on the streets that have been heretofore paved.

The appellants admit that section 112 applies only to taxation for general purposes, and not to assessments for local improvements, but their contention is that the uniformity and equality clause of the section, will be violated if the city, after having paid or obligated itself to pay a portion of the cost of paving other streets out of money raised or to be raised by general taxation, should assess the entire cost of paving and repaving the streets here in question against the property abutting thereon.

The inequality in taxation complained of is brought about, according to the appellants' contention, by the fact that the property abutting on the streets here in question has been or will be taxed for the payment of a portion of the cost of paving and repaving the streets that have been heretofore paved and repaved, while the property abutting on such other streets will not be taxed to pay any part of the expense of paving and repaving of the streets here to be paved and repaved.

There is no merit in this contention, or, to express it differently, we are unable to perceive any merit therein. There is no complaint that either the rate of taxation is not uniform throughout the city, or that all property is not assessed under uniform rules according to value. The inequality that here results, if such there be, does not result from the method by which taxes have or will be levied and collected, but from the disposition made or to be made of money that has been or will be raised by taxation, a matter not within the purview of section 112 of the Constitution.

The equal protection of the law clause of the Fourteenth Amendment to the Federal Constitution does not prevent a state from changing from one system of taxation or of assessment for local improvements to another

(*Bell's Gap R. R. Co.* v. *Pennsylvania,* 134 U. S. 232, 10 S. Ct. 533, 33 L. Ed. 892; *Michigan Central R. R. Co.* v. *Powers,* 201 U. S. 245, 26 S. Ct. 459, 50 L. Ed. 744), nor restrain a state legislature in the exercise of its discretion in the creation of local assessment districts (*Spencer* v. *Merchant,* 125 U. S. 345, 8 S. Ct. 921, 31 L. Ed. 763; *Walston* v. *Nevin,* 128 U. S. 578, 9 S. Ct. 192, 32 L. Ed. 544; Gray's Limitation on Taxing Power, section 414, *et seq.*), and is complied with if all property throughout the assessment district is dealt with alike.

"The legislature, in the exercise of its power of taxation, has the right to direct the whole or a part of the expense of a public improvement, such as the laying out, grading or repairing of a street, to be assessed upon the owners of lands benefited thereby; and the determination of the territorial district which should be taxed for a local improvement is within the province of legislative discretion." *Spencer* v. *Merchant,* 125 U. S. at page 355, 8 S. Ct. 926, 31 L. Ed. at page 767.

Local assessment districts may be created directly by the legislature, or the power so to do may be delegated to a subordinate agency (*Spencer* v. *Merchant, supra*), such as a municipality; and the determination of this subordinate agency, within the limits of the power delegated to it, of the territorial district which should be taxed for local improvement, is conclusive in the absence of fraud, oppression, or some wrong constituting a plain abuse of discretion (*Nugent* v. *City of Jackson,* 72 Miss. 1040, 18 So. 493; *Smith* v. *Aberdeen,* 25 Miss. 461; *Alcorn* v. *Hamer,* 38 Miss. 653; *Daily* v. *Swope,* 47 Miss. 367; *Vasser* v. *George,* 47 Miss. 721; *Macon* v. *Patty,* 57 Miss. 378, 34 Am. Rep. 451; 2 Elliott, Roads and Streets (3d Ed.) section 694, 25 R. C. L. 108). As property can be assessed for the payment of a local improvement only because of benefit thereto from the improvement, property abutting on one street cannot ordinarily be assessed for the payment of the cost of paving other streets, and consequently, each street not only can, but ordinarily should, constitute a separate assessment district for

street paving purposes. 28 Cyc. 1123; Hamilton's Law of Special Assessments, section 393.

It has been suggested that the assessment here is against each lot of the cost of the paving immediately in front of it, and that such an assessment is of such an arbitrary nature as to constitute the taking of property without due process of law (*Macon* v. *Patty,* 57 Miss. 378, 34 Am. Rep. 451; Gray's Limitation on Taxing Power, section 1978), but the ordinance does not so provide. The assessment is not against each lot of the cost of the paving immediately in front of it, but is of the entire cost of paving the street against all of the lots abutting thereon by the "front-foot" rule, each lot to pay in proportion to its frontage on the street; and that power to so assess abutting property may be delegated by the legislature to a municipality, as does the statute here under consideration, is settled in *Wilzinski* v. *Greenville,* 85 Miss. 393, 37 So. 807, and *French* v. *Barber Asphalt Paving Co.,* 181 U. S. 324, 21 S. Ct. 625, 45 L. Ed. 879.

The provision of section 6 of the statute, that "all engineering and inspection costs, including a proper proportion of the compensation, salaries and expenses of the engineering staff of the municipality, properly chargeable to any improvement, shall be deemed a part of the cost of the improvement," is objected to by the appellants, but the record presents no question relative thereto, for the reason that it does not appear from the record that the appellee intends to charge the appellants with any engineering and inspection costs, and until it attempts to charge such cost against the abutting property, no question of its power so to do arises.

No complaint is here made that the paving and repair of the streets is not of benefit to the property of the appellants abutting thereon, consequently, no question that could arise from such a complaint is here presented.

*Affirmed.*

ETHRIDGE, J. (dissenting.)

I am unable to agree with the majority opinion in this case. There was no finding in the ordinance that the property adjoining the street would be specially benefited to the extent of the cost of the improvement, nor to any extent whatever. Section 5 of the ordinance provides that the entire cost of the improvement be assessed to the abutting property-owners, said section reading as follows: "That the property-owners whose property abuts on Roseneath street from the north property line of Central street to the south end of the existing pavement at the south side of Robinson street shall pay the entire cost of paving and storm sewer on said street, also pay for all the other special improvements enumerated in section 2 of this resolution on said street in front or abutting along their property or be subject to assessment for the cost of the special improvement of the same."

By section 6 of the ordinance it is provided: "That the material with which said street is to be specially improved shall be any of that which is set forth in the plans and specifications prepared by the city engineer which have been adopted, are now on file with the city engineer."

The bill alleged that complainant is the owner, in possession of, and residing on a certain lot fronting sixty feet on Roseneath street in the city of Jackson; that his property had been assessed, taxes levied, and collected under *ad valorem* taxation for the payment of the entire cost by the city of paving the street intersections upon many miles of streets of the city of Jackson, it having been for many years the settled policy of the city to assess against the property abutting upon streets so paved only one-third of the cost of such paving, the property on the opposite sides of such improved streets paying one-third each of the cost of paving, and the city paying the other one-third, and that it will be necessary for the city for many years to collect *ad valorem* taxes from all the prop-

erty of the city to pay for the cost of the paving so assumed by the city.

The bill further alleged that the city on or about the 6th day of January, 1925, adopted the resolution above referred to.

The bill then avers that chapter 194, Laws of 1924, to the extent that it attempts to permit such change in the method of making assessments for paving, and to the extent that it permits or attempts to permit all the cost of the paving of the street intersections to be assessed against the property-owners on the street to be paved, and to the extent that it attempts to permit indefinite portions of the salaries of municipal employees to be included in the cost of such improvements, and to the extent that it attempts to permit the adoption of a penalty on the entire balance of the special assessment upon default in the payment of one of the installments thereof, is unconstitutional and void, and charges that if the defendants are permitted to construct said improvements and make assessment against the said property in the manner in which they are asserting the right to do, that complainant will suffer irreparable damages.

It is further argued that under the act here under consideration, chapter 194, Laws of 1924, the city will be permitted to discriminate between the property-owners in different parts of the city, living on different streets thereof, in that the cost of paving on one street, under said law, may be assessed wholly to the abutting property-owners, and on another street the entire cost of such paving may be paid out of the public funds of the city without special assessment; and in still other parts of the city, or in other streets, the cost of paving may be apportioned between the abutting property-owners and the city; that the result will be an unequal and unfair burden of taxation imposed against some property-owners, and in favor of other property-owners.

This brings into consideration a comparison of chapter 194, Laws of 1924, with chapter 260, Laws of 1912. By express provision of section 4, chapter 260, Laws of

1912, the city must use the same plan of paving and taxing the cost thereof throughout the city. Section 12, chapter 194, Laws of 1924, provides:

"This act shall not repeal any other statute relating to the subject-matter hereof, but shall be deemed to provide a supplemental, additional or alternative method of procedure for the benefit of all municipal corporations in the state of Mississippi, whether operating under chapter 99 of the Code of 1906 and amendments, special charter, or commission form of government and regardless of whether or not they have previously operated under chapter 260 Laws of 1912 or its amendments and shall be liberally construed to effectuate its purposes. Said municipalities operating under the said provisions of this act shall have authority to make special improvements and assess the cost thereof, either in whole or in part against the property abutting on the streets to be improved, said method of assessment to be determined upon as hereinabove provided, regardless of whether or not said municipalities may have been making said improvements under former laws and assessing the cost thereof in a manner different from that determined upon under this act, or paying for same out of the general improvement fund of said municipalities."

By a careful comparison of this section above set out with section 4, chapter 260, Laws of 1912, it will be seen that the provision of section 4, chapter 260, Laws of 1912, is not repealed, and by section 12, chapter 194, Laws of 1924, that act is not repealed except where it is in necessary conflict with the former act. The rule that where the legislature enacts a complete scheme covering a subject it repeals former laws on the same subject, though mentioned in the act, is not applicable here, because the present act is only supplemental and additional and alternative, except as it specifically covers the same subject.

I think the act, chapter 194, Laws of 1924, would be construed, without reference to section 4, chapter 260, Laws of 1912, to mean that the city would have to operate

under this act throughout the city if it is to act under it at all.

Under the provision of section 12, chapter 194, Laws of 1924, above quoted, in the latter part of the said section the city is authorized to change its plan of improving streets whenever one plan is found to be impracticable. The city, being a single municipality, cannot make one law applicable to one portion of the city, and another law applicable to another portion thereof at the same time. So long as it is operating under one law it must operate throughout the city in the same manner. The citizens of the municipality are entitled to the equal protection of the law, which means the protection of equal laws operating throughout the municipality.

I think it is essential for the city, when it undertakes a special improvement under the law, to find as a fact whether the benefits to abutting property will equal the cost of the improvement, and the city cannot impose on abutting property a substantially greater burden than the benefit that will result to the property from the construction of the proposed improvement, and this must be a condition precedent to imposing on the owner the cost or a part of the cost of the improvement of the public street. The streets belong to the city. They are public property, and, while the city may tax the abutting owners to the extent of the benefits conferred on their property, it cannot, under the pretense of conferring benefits, take the property of the citizen for street improvement without benefits equivalent to such taking. For this reason the law has vested the discretion of the power of decision in the municipal authorities of determining the extent to which such cost will be taxed to the abutting property. To go further than this would violate sections 14, 17, and 24 of the state Constitution.

Section 14 of the Constitution provides: ''No person shall be deprived of life, liberty, or property except by due process of law.''

Section 17 of the Constitution provides: ''Private property shall not be taken or damaged for public use,

except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law; and whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be public shall be a judicial question, and, as such, determined without regard to legislative assertion that the use is public.''·

Section 24 of the Constitution provides: ''All courts shall be open; and every person for an injury done him in his lands, goods, person, or reputation, shall have remedy by due process of law, and right and justice shall be administered without sale, denial, or delay.''

See 10 Cent. Dig. Constitutional Law, sections 950-963; First Decennial Digest and Second Decennial Digest, Constitutional Law, 321 *et seq.*

These provisions of the Constitution are designed to protect the private citizen from the wrongs of the government or any of its officers as well as for other purposes. They are restraints upon the governing authorities, including the legislature, and the legislature cannot itself arbitrarily deprive the citizen of life, liberty, or property, or deny the citizen the right to compensation for property taken for a public use, or deny him a resort to a court of justice, no matter what scheme or name it may adopt for that purpose.

The statutory scheme here involved, and all similar schemes authorizing the special assessments of specific property for public improvements, is founded on the theory that the improvement confers a benefit which is the equivalent of the burden exacted by the public. The matter is learnedly and elaborately discussed in *Town of Macon* v. *Patty,* 57 Miss. 378, 38 Am. Rep. 451, by Chief Justice George, Mississippi's greatest constitutional lawyer. See, also, *Nugent* v. *City of Jackson,* 72 Miss. 1040, 18 So. 493; *Edwards House Co.* v. *City of Jackson,* 91 Miss. 429, 45 So. 14; *Cox* v. *Wallace,* 100 Miss. 525, 56 So. 461; *Bouslog* v. *Gulfport,* 112 Miss. 184, 72 So. 896; *Sick* v. *City of Bay St. Louis,* 113 Miss. 175, 74 So. 272; *Wilzinski* v. *Greenville,* 85 Miss. 393, 37 So. 807.

In a case note to *Re Bonds of the Madera Irrigation District,* 14 L. R. A. 755, the editor of that series, in commenting on a California case holding that neither the fact that some property within the district formed for irrigation of arid lands within its borders by means of taxation will receive no benefit therefrom, nor that all the property that will be benefited is not included within the taxing district, will render the proceeding for the formation of the district unlawful, said:

"The doctrine declared in the main case, following *Lent* v. *Tillson,* 72 Cal. 428, that the expenses for a local improvement may be assessed without regard to benefits, or at least that the benefit is not the source of the power, is supported by very few authorities.

"Most cases on the subject declare that local assessments for public improvements can be constitutional only when the improvements clearly confer special benefits on the properties assessed, and only to the extent of those benefits"—citing *Hammett* v. *Philadelphia,* 65 Pa. 146, 3 Am. Rep. 615; *Lee* v. *Ruggles,* 62 Ill. 427; *Chicago* v. *Larned,* 34 Ill. 279; *Excelsior Planting & Mfg. Co.* v. *Green,* 39 La. Ann. 455, 1 So. 873; *Tide-Water Co.* v. *Coster,* 18 N. J. Eq. 518, 90 Am. Dec. 634. *Re Drainage of Lands,* 35 N. J. Law, 497; *Illinois Central R. R. Co.* v. *Bloomington,* 76 Ill. 447; *Crawford* v. *People,* 82 Ill. 557; *Re Fourth Avenue,* 3 Wend. (N. Y.) 452; *Re Albany street,* 11 Wend. (N. Y.) 149, 25 Am. Dec. 618; *Gilmore* v. *Hentig,* 33 Kan. 174, 5 P. 781; *Thomas* v. *Gain,* 35 Mich. 155, 24 Am. Rep. 535; *Allegheny City* v. *Western Pennsylvania R. R. Co.,* 138 Pa. 375, 21 A. 763; *Washington Avenue,* 69 Pa. 352, 8 Am. Rep. 255.

That case note discusses the question and the application of the authorities.

In *City of Owensboro* v. *Sweeney,* 129 Ky. 607, 111 S. W. 364, 18 L. R. A. (N. S.) 181, the Kentucky court held that special taxes cannot be levied unless the property charged receives a corresponding physical, material, and substantial benefit from the exaction. In that case the court held that a special assessment could not be levied

on abutting property to pay for street sprinkling, and has a case note on the subject of street sprinkling as a basis for special assessment. At pages 184 et seq., 18 L. R. A. (N. S.) the court said:

"The question of municipal taxation is one of the most important and intricate public questions of the day. Municipal authorities as a rule are disposed to be liberal in the imposition of taxes, and do not seem disturbed by the ever-increasing burden of indebtedness that is accumulating upon the cities of the country. Fortunately, the Constitution of this state has placed a check upon the extravagant expenditure of public moneys, and has fixed a limit beyond which a general property tax for public purposes cannot go unless assented to by the voters at an election held for that purpose. But this valuable and salutary limitation would afford little protection if, under the guise of improving property, special taxes might be levied without let or hindrance, and without regard to the constitutional limitations which do not apply to this method of taxation. If the right to lay these special assessments can be extended to embrace any subject which the municipal authorities, with the aid of the legislature, deem it expedient to reach, it will soon come to pass that the wise safeguards of the Constitution will afford slight security to the taxpayer. To evade them, it will only be necessary for the municipal authorities to place the burden upon abutting owners under the pretense that it is an improvement tax, and hence may be charged in addition to the property tax imposed. Under this plan or scheme, should it be held allowable, if the general property tax in a city has reached the limit, and no larger sum can be gathered from this source, the city counsel may, by charging some of the current expenses of the city to abutting owners, divert to other uses the amount theretofore expended for this purpose out of the property tax collected. . . .

"Arbitrary power exists nowhere in this Republic. There is a line at which the power to tax and take for special assessments must stop. The only question is

where to draw it, and, in the character of tax under consideration, we may safely say that it must stop when it goes beyond real and substantial benefits to the abutting property, distinct from those enjoyed by the public. The theory upon which special taxes are sustained is that the property assessed receives special benefits in addition to those received by the community at large. 'This,' says Dillon in his work on Municipal Corporations, in section 761, 'is the true and only just foundation upon which local assessments can rest; and, to the extent of special benefits, it is everywhere admitted that the legislature may authorize local taxes or assessments to be made.' Cooley on Taxation, section 1153, lays it down that 'there can be no justification for any proceeding which charges the land with an assessment greater than the benefits. It is a plain case of appropriating private property to public use without just compensation, and a clear case of abuse of legislative authority in imposing the burdens of a public improvement on persons or property not specially benefited would undoubtedly be treated as an excess of power, and void.' The supreme court of the United States, in *Illinois Central R. Co.* v. *Decatur*, 147 U. S. 190, 37 L. Ed. 132, 13 S. Ct. 293, in discussing the difference between general taxes and special taxes, said: 'On the other hand, special assessments or special taxes proceed upon the theory that, when a local improvement enhances the value of neighboring property, that property should pay for the improvement,'—and quotes with approval from Cooley on Taxation (chapter 20, p. 416, section 1), the following: 'Special assessments, on the other hand, are made upon the assumption that a portion of the community is to be especially or peculiarly benefited in the enhancement of the value of property peculiarly situated as regards a contemplated expenditure of public funds. And, in addition to the general levy, they demand that special contributions in consideration of the special benefit shall be made by the persons receiving it. The justice of demanding special contribution is supposed to be evident in the fact that

the persons who are to make it, while they are made to bear the cost of the public work, are at the same time to suffer no pecuniary loss thereby; their property being increased in value by the expenditure to an amount at least equal to the sum they are required to pay. This is the idea that underlies all these levies." And so in the Law of Special Assessments by Hamilton (section 236), the rule is announced, supported by ample authority, that 'special taxation for a local improvement, as well as special assessments of benefits for the same, necessarily proceeds upon the theory of benefits to the property upon which it is levied; and that a burden imposed upon any other theory is a mere arbitrary exaction,—a taking of private property for public use without just compensation.' And in Smith's Modern Law of Municipal Corporations, section 1228a: 'A special assessment, or local assessment, as it is frequently called, is a species of taxation imposed by municipalities for the purpose of local improvement, and is based upon the assumption that the property in the locality of a proposed improvement will be specially and peculiarly benefited thereby, by which a duty is imposed upon the owners to contribute an amount in payment of the cost of the improvement equal to the benefits received. . . . Special assessments rest upon the ground that special burdens may be imposed for special or peculiar benefits accruing from public improvements. . . . Local assessments can only be imposed to pay for local improvements clearly conferring special benefits on property assessed, and to the extent of those benefits only.' "

In Taxation by Assessment, by Page & Jones, vol. 2, section 651, under the heading of "Theory of Apportionment," it is said: "Accordingly, since assessments are based upon the theory of benefits, they must in theory, at least be apportioned according to the amount of the special benefits conferred upon each separate tract of property assessed by the improvement for which the assessment is levied, and in theory, at least, the amount of

the assessment cannot exceed the amount of such special benefit.''

At page 1114 of the same volume it is said: "Undoubtedly, the simplest, fairest, and most just rule, and, one that best conforms to the underlying theory of the local assessment, is that the existence and amount of special benefits is to be determined by the effect of the improvement upon the market value of the property which it is claimed is benefited by such improvement. If the construction of such improvement increases the market value of such property, such property receives a benefit, and the amount of such benefit is measured by the amount of such increase. In such cases the effect of the public improvement upon both the land and the improvements thereon, considered as an entirety, must be considered. If this theory is applied, perfect justice is secured. The property-owner pays as his assessment the exact amount which he could obtain for his property in excess of the amount he could have obtained for it had the improvement not been constructed. . . . Conversely, under this theory, if there is no increase in the market value of the property which it is sought to assess, no special benefit exists and no assessment therefor can be levied. An assessment in excess of the increase in value of the property assessed cannot be upheld under this theory. In applying this theory, the increase in value which is regarded as the test of special benefit, must be the increase which is due solely to the improvement for which it is sought to levy the assessment. An increase in value which is due to other causes, such as to the general advance in the price of land, as that which is occasioned by the general development of the neighborhood; cannot be regarded as the test of the amount of special benefit conferred by such improvement.''

In *Hutcheson* v. *Storrie,* 92 Tex. 685, 51 S. W. 848, 45 L. R. A. 289, 71 Am. St. Rep. 884, the supreme court of Texas held that the state legislature cannot authorize a municipal corporation to assess upon abutting property the cost of street or public improvement, without re-

gard to benefits derived, and make such assessment conclusive upon the owner without an opportunity to contest the question of benefits. Such an assessment is null and void as a whole, and not merely as to so much thereof as may be shown to be in excess of the benefits received. See, to the same effect, *Norwood* v. *Baker,* 172 U. S. 269, 19 S. Ct. 187, 43 L. Ed. 443; *Myles Salt Co.* v. *Board of Commissioners,* 239 U. S. 478, 36 S. Ct. 204, 60 L. Ed. 392, L. R. A. 1918E, 190.

In the *Myles Salt Co. Case, supra,* L. R. A. 1918E, 190, the supreme court of the United States held that an island, which, being high land, is not and cannot be benefited directly or indirectly by a drainage improvement, may not, consistently with the due process of law clause of the United States Constitution, the Fourteenth Amendment, be included within the drainage district solely for the purpose of deriving a revenue from the levy and collection of drainage taxes thereon for the benefit of other lands subject to be improved by drainage. In the case note to this case, the editor of the L. R. A. series, L. R. A. 1918E, page 190, says:

"The theory which underlies all assessments of property for a public improvement is that the property is benefited by the improvement and should bear a proportion of the cost thereof corresponding to this benefit. There can be little doubt that an assessment upon property which is not benefited is void, or that an exaction in the way of a special assessment in excess of benefits is, to the extent of such excess, void, and without due process of law. This underlying principle furnishes the basis for the decision in *Myles Salt Co.* v. *Iberia & St. M. Drainage Dist., ante,* and *Horton Investment Co.* v. *Seattle,* L. R. A. 1918E, p. 194."

In *Adams* v. *Shelbyville,* 154 Ind. 467, 57 N. E. 114, 49 L. R. A. 797, 77 Am. St. Rep. 484, the Indiana court held that the imposition of assessments for local improvements per front foot, irrespective of the question of accruing benefits, is in violation of the Fourteenth Amendment to the Federal Constitution, that the legislature may cre-

ate, or authorize a municipality to create, a local taxing district for local improvement purposes, which includes part only of the property within the municipality; and that a deficit in special benefits to meet the cost of a street improvement must, under the statutes of that state (Indiana) be provided for from the general revenues of the municipality. See, also, *Shaefer* v. *Werling,* 156 Ind. 704; 60 N. E. 149, affirmed in 188 U. S. 516, 23 S. Ct. 449, 47 L. Ed. 570; *Board* v. *Dunbar,* 107 Ark. 285, 155 S. W. 96; *Pomroy* v. *Board,* 55 Colo. 476, 136 P. 78; *Chicago* v. *Wells,* 236 Ill. 129, 86 N. E. 197, 23 L. R. A. (N. S.) 405, 127 Am. St. Rep. 282; *Mauldin* v. *City Council of Greenville,* 53 S. C. 285, 31 S. E. 252, 43 L. R. A. 101, 69 Am. St. Rep. 855; *Wilson* v. *Trenton,* 61 N. J. Law, 599, 40 A. 575, 44 L. R. A. 540, 68 Am. St. Rep. 714, and note; *Hayes* v. *Douglas County,* 92 Wis. 429, 65 N. W. 482, 31 L. R. A. 213, 53 Am. St. Rep. 926; *Violett* v. *Alexandria,* 92 Va. 561, 23 S. E. 909, 31 L. R. A. 382, 53 Am. St. Rep. 825; *Tide-Water Co.* v. *Coster,* 18 N. J. Eq. 518, 90 Am. Dec. 634; *Re Drainage of Lands,* 35 N. J. Law, 497; *I. C. R. R. Co.* v. *Bloomington,* 76 Ill. 447.

In *Sick* v. *Bay St. Louis,* 113 Miss. 175, 74 So. 272, it was stated in the sixth syllabus: "A city cannot arbitrarily assess special benefits against property-owners for improvements, but such assessments must be reasonable, having reference to the benefit conferred, and before this assessment of benefits is made, notice must be given the property-owner, with an estimate of the cost of the improvement to be made, with a right to submit evidence and make objections thereto."

In the ninth syllabus in the Sick case, it is said: "Where a municipality constructs a sea wall it cannot arbitrarily impose one-half of the expense on property-owners abutting such improvements, regardless of the cost of construction and the actual benefit conferred, since such assessment might be confiscatory."

In *Bouslog* v. *City of Gulfport,* 112 Miss. 184, 72 So. 896, the court held that under sections 14 and 24 of the Constitution that the legislature could not impose an

assessment for benefits without itself providing for a notice and hearing as to the proposed benefits, costs, etc.

In the case of *City of Jackson* v. *Williams,* 92 Miss. 301, 46 So. 551, it was held that an ordinance declaring the work or improvement necessary must have in it such facts as will fully enable the property-owner to find out what work is required to be done, and that a resolution merely declaring the necessity for a sidewalk between two points on the designated site of a street, and that the property-owner be notified to construct the same or to petition, etc., does not contain a sufficient description of the sidewalk.

I think from these authorities and numerous others from other states that could be cited, and may be found in cases and case notes already referred to, it is clear that the legislature cannot confer the right to compel a property-owner to improve a public street beyond the material benefits that will come to his property, and that to do so is the plain taking of private property for the public use in violation of section 17 of the Constitution. Section 17 of the Constitution is designed to secure the owners of property against its appropriation for the use of the public regardless of the name that may be given the proceeding. It would be a vain and useless thing for the constitutional convention to ordain section 17, if the legislature, under the fiction of conferring a benefit, can take from a property-owner his property where no benefit is actually conferred. The question in such case is one for a judicial hearing—one where the property-owner may produce evidence to show that he is not benefited, and appeal to the courts to protect him from spoliation.

There is some confusion apparently due to the fact that the United States supreme court has held that the Federal Constitution does not protect a citizen of a state legislature on this question. There are decisions in jurisdictions where the question is considered a legislative question as to benefits binding on the courts which hold that no benefit need actually be conferred to justify the

cost of the improvement, but these cases are relatively few, and in all states where a constitutional provision similar to section 17 of our Constitution exists, and the question is considered a judicial question, the courts uniformly hold, I think, that there must be an actual, as against an imaginary, benefit. The delicacy of the question of the United State supreme court in dealing with the state laws is manifest, because the states have different systems and different theories. The prohibition of the Federal Constitution against the taking of private properties for public uses is not applicable to the states, and to prevent the state government from taking private property for public use there must be some provision in the state Constitution. It seems from a reading of the numerous acts of legislature that members of the legislature think they can go to the extent permitted by the Federal Constitution, but such is not the case. The Bill of Rights in the state Constitution guarantees that the citizen's property shall not be taken for public use without an equivalent benefit. Of course this does not apply to ordinary taxation, because the needs of the government are the only limits against the ordinary taxing power, but where the limitation on the taxing power is taken away because of the theory of the benefit being equivalent to the tax, it does not follow that the municipality or state can select private property for appropriaion under the guise of public improvement. In such case section 17 of the Constitution becomes available. While our court has said in some of the cases that the citizen's property was not taken in violation of section 17 under the particular case, and the rule appears to be general in its statement, yet it must be applied to the case before the court; and where the benefit exceeds the burden, certainly there is no taking. But if the benefit is not equivalent to the burden, there is, manifestly, a taking.

In *Macon* v. *Patty,* 57 Miss. 378, 34 Am. Rep. 451, the court elaborately reviewed the cases then in the books dealing with the question, and at page 384, Chief Justice GEORGE said:

"It is now well settled with no dissenting voice, except in Iowa, that a local assessment requiring each lot owner on a single street or part of a street to improve the street in front of his property at his own expense would be unconstitutional, because there would be no apportionment of the tax; and Judge COOLEY says that such a law 'would be nakedly an arbitrary command to each owner to construct the street in front of his lot at his own expense, according to a prescribed standard; and a power to issue such command could never be exercised by a constitutional government, unless we are at liberty to treat it as a police regulation, and place the duty to make the streets upon the same footing as that to keep the sidewalks free from obstruction and fit for passage. But any such idea is clearly inadmissible.' Cooley Const. Lim. 508."

At page 386, Judge GEORGE says: "A local assessment can only be levied on land; it cannot, as a tax can, be made a personal liability of the taxpayer; it is an assessment on the thing supposed to be benefited. A tax is levied on the whole state, or a known political subdivision, as a county or town. A local assessment is levied on property situated in a district created for the express purpose of the levy, and possessing no other function, or even existence, than to be the thing on which the levy is made. A tax is a continuing burden, and must be collected at stated short intervals for all time, and without it government cannot exist; a local assessment is exceptional both as to time and locality—it is brought into being for a particular occasion, and to accomplish a particular purpose, and dies with the passing of the occasion and the accomplishment of the purpose. A tax is levied, collected, and administered by a public agency, elected by and responsible to the community upon which it is imposed; a local assessment is made by an authority *ab extra*. Yet it is like a tax, in that it is imposed under an authority derived from the legislature, and is an enforced contribution to the public welfare, and its payment may be enforced by the summary method allowed

for the collection of taxes. It is like a tax, in that it must be levied for a public purpose, and must be apportioned by some reasonable rule among those upon whose property it is levied. It is unlike a tax, in that the proceeds of the assessment must be expended, in an improvement from which a benefit clearly exceptive and plainly perceived must enure to the property upon which it is imposed, or else the courts will interfere to prevent its enforcement.''

At page 399, after reviewing a number of authorities from other states, the court, through Judge GEORGE, said:

''Since then it appears, that under the Constitution of this state, private property cannot be taken for the public use, under the plea that due compensation is made by benefits arising from the appropriation; and since it has also been shown that the taxing power may be limited and controlled by what Judge MARSHALL, in the passage heretofore quoted, called the great conservative principle of the Constitution—the provision prohibiting the taking of private property for public use without due compensation—it follows that the power to make local assessments in this state does not exist, if there be no other foundation for it than the equalization of the burdens with the benefits to arise from the local improvement.''

If the property-owner is to be subjected to the unrestrained will of municipal authorities for all of the improvements named in section 2, chapter 194, Laws of 1924, which the municipality may desire to make at the property-owner's expense, it would certainly be an evil day for property-owners. If they can go further and select particular localities and communities for discrimination or favoritism it will be worse. If they can impose upon the property-owners a part of the salaries of the city officers, and charge that against specific property, I can see no reason why the entire burden of city government could not be imposed upon the political opponents of the city administration. Doubtless this would be pleasing to the large number who would be the recipients of municipal favors, and who escaped the burden of mak-

ing the city correspond to the high ideas and aesthetic taste of the municipal authorities.

The act, chapter 194, Laws of 1924, is extremely arbitrary and intolerably unjust. Just why a legislature would confer such sweeping powers is not apparent.

McGOWEN, J., concurs in this dissent.